**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert Franklin TYACK, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 3, 2015.

Filed Nov. 17, 2015.

---

Mark S. Zearfaus, Sr., Altoona, for appellant.

Richard A. Consiglio, District Attorney, Holidaysburg, for Commonwealth, appellee.

BEFORE: SHOGAN, OLSON and WECHT, JJ.

OPINION BY OLSON, J.:

Appellant, Robert Franklin Tyack, appeals from the judgment of sentence entered on September 11, 2014, as made final by the denial of Appellant's post-sentence motion on November 12, 2014. We affirm.

The evidence during Appellant's jury trial was as follows.

At approximately 3:00 a.m. on September 1, 2012, Sergeant William L. Boyles, Jr.[1] of the Altoona Police Department was on patrol in the City of Altoona, when he saw Appellant loitering in an alley. Sergeant Boyles testified that he approached Appellant to "see what he was doing out there in the alley at that hour." N.T. Trial, 6/19/14, at 44.

---

1. At the time of Appellant's arrest, Sergeant Boyles was a corporal in the Altoona Police Department. N.T. Trial, 6/19/14, at 42–43. However, we will refer to Sergeant Boyles in accordance with his rank at the time of Appellant's trial.

Backup police officers, Corporal Thomas Venios[2] and Patrolman Ben Meintel, arrived on the scene soon thereafter, and the backup officers recognized Appellant, on sight, from prior interactions they had with him. *Id.* at 46 and 91. Further, at that time, Corporal Venios knew: that Appellant was recently arrested for committing another crime; that, during the prior arrest, Appellant was found in possession of a stun gun; that, pursuant to 18 Pa. C.S.A. § 908.1(c), Appellant was "not permitted to possess an electronic incapacitation device ... [b]ecause [Appellant] ha[d] been convicted of [ ] domestic violence" in the past; and, that Appellant "was prone to fight with officers." *Id.* at 96–98, 102–104, and 107; *see also* 18 Pa. C.S.A. § 908.1(c). Given this knowledge, Corporal Venios asked Appellant "if he had his [stun gun] on him;" Appellant "said that he did have it on him and that it was in his right front pants pocket." N.T. Trial, 6/19/14, at 92. As Corporal Venios testified:

> At that point[,] I looked at his right front pants pocket and observed a box-like object consistent with the size of a [TASER].... I asked him to place his hands on top of his head in order for us to retrieve the weapon from inside his pants pocket. At that point, he began to walk away from us and we quickly grabbed ... an arm.

*Id.* at 92.

Following a struggle, the officers handcuffed and arrested Appellant; the Commonwealth later charged Appellant with a variety of crimes, including "possession of an electric or electronic incapacitation device by a prohibited person." 18 Pa.C.S.A. § 908.1(c); Commonwealth's Amended Information, 6/17/14, at 1.

Prior to trial, the Commonwealth filed a motion *in limine*, seeking to prevent Appellant from either presenting evidence or arguing to the jury that, on the night in question, Appellant's stun gun was inoperable because it did not contain batteries. Commonwealth's Motion *in Limine*, 6/18/14, at 1. As the Commonwealth claimed, "the operability of the stun gun is neither an element [of] the offense[ ] nor ... an appropriate defense to the charge" of possession of an electric or electronic incapacitation device by a prohibited person. *Id.* The trial court granted the Commonwealth's pre-trial motion and, following trial, the jury found Appellant guilty of possession of an electric or electronic incapacitation device by a prohibited person. N.T. Trial, 6/19/14, at 161; 18 Pa.C.S.A. § 908.1(c).

On September 11, 2014, the trial court sentenced Appellant to serve 60 days to one year in prison for violating 18 Pa. C.S.A. § 908.1(c). Following the denial of Appellant's post-sentence motion, Appellant filed a timely notice of appeal to this Court. Appellant raises two claims on appeal:[3]

[1.] Whether the trial court erred in barring [ ] Appellant from the argument that the stun gun was inoperable?

---

**2.** At the time of Appellant's arrest, Corporal Venios was a patrolman in the Altoona Police Department. *N.T. Trial, 6/19/14, at 90.* However, we will refer to Corporal Venios in accordance with his rank at Appellant's trial.

**3.** The trial court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Ap-

pellant complied and, within his Rule 1925(b) statement, Appellant raised the following claims:

1. Whether the [trial] court erred in ruling that the inoperability of the stun gun was not an issue to be determined by the jury in the course of the case[?]

   ...

2. If the [trial] court erred in making the ruling it did on the inoperability issue

[2.] Whether the evidence was insufficient to result in a conviction due to the fact that "domestic violence" is not an element of [Pennsylvania's] simple assault statute?

Appellant's Brief at 3 (some internal capitalization omitted).

▅ Appellant first claims that the trial court erred when it granted the Commonwealth's pre-trial motion and held that Appellant could not present evidence or argument that the stun gun was inoperable because it did not contain batteries. This claim fails.

We have explained:

> our standard of review for evidentiary rulings is a narrow one: [w]hen we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. A party suffers prejudice when the trial court's error could have affected the verdict.

*Reott v. Asia Trend, Inc.,* 7 A.3d 830, 839 (Pa.Super.2010) (internal quotations and citations omitted).

> Moreover, under our Rules of Evidence: The threshold inquiry with the admission of evidence is whether the evidence is relevant. Unless otherwise prohibited by law, all relevant evidence is admissible; all irrelevant evidence is inadmissible. Pa.R.E. 402. The Pennsylvania Rules of Evidence define[ ] relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401.

*Commonwealth v. Flamer,* 53 A.3d 82, 88 n. 5 (Pa.Super.2012) (some internal citations omitted).

Here, Appellant was charged with and convicted of "possession of an electric or electronic incapacitation device by a prohibited person." 18 Pa.C.S.A. § 908.1(c). In relevant part, Section 908.1 declares:

> **(c) Prohibited possession.**—No person prohibited from possessing a firearm pursuant to [18 Pa.C.S.A. § 6105] (relating to persons not to possess, use, manufacture, control, sell or transfer firearms) may possess or use an electric or electronic incapacitation device.
>
> . . .
>
> **(f) Definition.**—As used in this section, the term "electric or electronic incapacitation device" means a portable device which is designed or intended by the manufacturer to be used, offensively or defensively, to temporarily immobilize or incapacitate persons by means of electric pulse or current, including devices operating by means of carbon dioxide propellant. The term does not include cattle prods, electric fences or other electric devices when used in agricultural, animal husbandry or food production activities.

18 Pa.C.S.A. § 908.1(c) and (f).

Appellant claims that the trial court erred when it ruled that he could not present evidence or argument that the stun gun did not contain batteries and was,

---

(above), does that also make the statute, 18 [Pa.C.S.A. § 908.1], inapplicable[?]

3. Whether the [trial] court erred in finding [there] was sufficient evidence to sustain the verdict[?]

4. Whether the [trial] court erred in finding there was weighty enough evidence to sustain the verdict[?]

Appellant's Rule 1925(b) Statement, 12/30/14, at 1–2 (some internal capitalization omitted).

therefore, inoperable. However, the trial court's ruling was required by both the plain statutory language of Section 908.1 and our Supreme Court's opinion in *Commonwealth v. Zortman*, 611 Pa. 22, 23 A.3d 519 (2011).

In *Zortman*, the police searched the defendant's home and discovered an inoperable handgun in the bedroom and marijuana in other portions of the house. *Id.* at 519–520. After the defendant pleaded guilty to possessing marijuana with the intent to distribute (hereinafter "PWID"), the Commonwealth notified the defendant that it intended to invoke the mandatory minimum sentence, under 42 Pa.C.S.A. § 9712.1, because a "firearm" was discovered "in close proximity" to the marijuana.[4] *Id.*

In relevant part, Section 9712.1 provided that a defendant was subject to a five-year mandatory minimum sentence, where the defendant was convicted of PWID "when[,] at the time of the offense[,] the person ... is in physical possession or control of a firearm." 42 Pa.C.S.A. § 9712.1(a) (2011). Further, to define the term "firearm," Section 9712.1 adopted the definition of "firearm" in Section 9712. 42 Pa.C.S.A. § 9712.1(f) (2011). That section defined a

"firearm" as: "[a]ny weapon, including a starter gun, which will or is designed to or may readily be converted to expel a projectile by the action of an explosive or the expansion of gas therein." 42 Pa.C.S.A. § 9712(e) (2011).[5]

While the trial court originally imposed the mandatory minimum sentence, Mr. Zortman later filed a post-sentence motion and argued that Section 9712.1 did not apply because the gun was missing the firing pin and was, thus, inoperable. *Id.* at 520–521. Following a hearing, the trial court concluded that, because the handgun was inoperable, Section 9712.1 could not apply. The trial court thus vacated the defendant's sentence and imposed a sentence of probation. The Commonwealth filed an appeal to this Court, we reversed, and the defendant filed a petition for allowance of appeal to the Pennsylvania Supreme Court. *Id.* at 520–522. The Pennsylvania Supreme Court granted the defendant's petition and, on appeal, considered the issue of "whether an inoperable handgun may be considered a 'firearm' for purposes of ... 42 Pa. C.S.A. § 9712.1" and § 9712.

The Supreme Court held that, under the plain statutory language of Section 9712,

---

**4.** In *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super.2014) (*en banc*), an *en banc* panel of this Court held that 42 Pa.C.S.A. § 9712.1 was unconstitutional in its entirety. Specifically, *Newman* held that Section 9712.1 unconstitutionally provided that "possession of a firearm is [ ] a sentencing factor to be determined by the trial court upon a preponderance of the evidence, and not an element of the underlying crime to be determined by the jury beyond a reasonable doubt," in violation of *Alleyne v. United States*, — U.S. —, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), and that the unconstitutional portions of the statute were not severable from the remainder of the statute. *Newman*, 99 A.3d at 91–103. However, *Newman's* holding that, under *Alleyne*, Section 9712.1 was no longer constitutionally valid has no bearing upon our analysis in the

case at bar where we utilize *Zortman*—and its interpretation of Section 9712.1—to illustrate the application of our principles of statutory construction and, more specifically, to aid us in determining whether the "operability" of an electronic incapacitation device is a condition inherent within the statutory definition set forth at 18 Pa.C.S.A. § 908.1.

**5.** In *Commonwealth v. Valentine*, 101 A.3d 801 (Pa.Super.2014), this Court applied *Newman* and held that 42 Pa.C.S.A. § 9712 was unconstitutional in its entirety. *Valentine*, 101 A.3d at 811–812. Again, however, we are applying *Zortman* and Section 9712 as precedent for the manner in which *Zortman* interpreted a statute—and not for the underlying, substantive character of the statute.

the inoperable handgun was a "firearm," as it was a weapon "designed to" fire a bullet. *See* 42 Pa.C.S.A. § 9712(f) (2011). The Supreme Court thus affirmed this Court's ruling.

The *Zortman* Court began its analysis by reciting our principals of statutory construction:

It is well-settled that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and that the plain language of the statute is generally the best indicator of such intent. 1 Pa.C.S.A. § 1921(a) and (b). When ascertaining the intent of the General Assembly, there is a presumption that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable. 1 Pa. C.S.A. § 1922(1). Furthermore, the words of a statute shall be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S.A. § 1903(a). Every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa. C.S.A. § 1921(a). We will only look beyond the plain meaning of the statute where the words of the statute are unclear or ambiguous. 1 Pa.C.S.A. § 1921(c). Finally, we also presume that when enacting legislation, the General Assembly is familiar with extant law.

*Zortman*, 23 A.3d at 525 (some internal citations omitted).

Utilizing these principals, the *Zortman* Court held that "[t]he definition of 'firearm' in Section 9712 is clear and unambiguous"—and that the definition plainly encompassed the inoperable handgun at issue in the case because the handgun was "designed to" fire a bullet. *Id.* The Supreme Court reasoned:

Although the loaded [ ] handgun was missing its firing pin and thus was inoperable, we have no doubt that the handgun was "designed to" fire a bullet. Arguably, firing a bullet is the only true "designed" function—in fact, the essence—of a handgun, pistol, or "firearm." This is so whether the handgun is functional, defectively manufactured, or temporarily inoperable for some other reason. A car without gas does not lose its identity as an entity designed for locomotion. A laptop computer does not cease to be a computer if its battery is removed. By the same reasoning, nor does a handgun lose its designed function merely because a critical piece is missing. The Superior Court correctly concluded: "Thus, it is irrelevant that the weapon in question did not have a firing pin and was no longer capable of actually firing a bullet; the record establishes that it was a gun that had been designed to shoot bullets. It thereby fell within the definition of firearm under § 9712(e) and thus, § 9712.1." [*Commonwealth v. Zortman*, 985 A.2d 238, 243 (Pa.Super.2009) ]. Appellant's interpretation of "firearm" as requiring some show of operability would negate Section 9712's definition of a "firearm" as, *inter alia*, a weapon "designed to" fire bullets. *Zortman*, 23 A.3d at 526.

With respect to the case at bar, Appellant was convicted of "possession of an electric or electronic incapacitation device by a prohibited person"—and, similar to the statute at issue in *Zortman*, the legislature defined an "electric or electronic incapacitation device" as "a portable device **which is designed or intended by the manufacturer to be used,** offensively or defensively, to temporarily immobilize or incapacitate persons by means of electric pulse or current." 18 Pa.C.S.A. § 908.1(c) and (f) (emphasis added). Under our principals of statutory construction, as illumi-

nated by *Zortman*, we conclude that the statutory language of 18 Pa.C.S.A. § 908.1(c) and (f) is "clear and unambiguous" and that any evidence that Appellant's stun gun was inoperable because it did not contain batteries was irrelevant to both the Commonwealth's case and Appellant's defense. To paraphrase our Supreme Court:

> [Even if Appellant's stun gun] was missing its [batteries] and thus was inoperable, we have no doubt that the [stun gun] was "designed to" [temporarily immobilize or incapacitate persons by means of electric pulse or current]. Arguably, [temporarily immobilizing or incapacitating persons by means of electric pulse or current] is the only true "designed" function—in fact, the essence—of a [stun gun]. This is so whether the [stun gun] is functional, defectively manufactured, or temporarily inoperable for some other reason. A car without gas does not lose its identity as an entity designed for locomotion. A laptop computer does not cease to be a computer if its battery is removed. By the same reasoning, nor does a [stun gun] lose its designed function merely because a critical piece is missing.

*See Zortman*, 23 A.3d at 526.

Thus, we conclude that the trial court did not err when it granted the Commonwealth's motion *in limine* and held that Appellant could not present evidence or argument that the stun gun was inoperable because it did not contain batteries. The evidence was irrelevant to the case at bar. *See* Pa.R.E. 402. Appellant's first claim on appeal fails.

■ For Appellant's final claim on appeal, Appellant contends that the evidence was insufficient to support his conviction

for possession of an electric or electronic incapacitation device by a prohibited person, as the Commonwealth failed to prove that he was ineligible to possess the device. *See* Appellant's Brief at 9. We are constrained to conclude that Appellant's sufficiency claim is waived, as Appellant's Rule 1925(b) statement did not sufficiently identify the error that Appellant intended to challenge on appeal.

■ As this Court has consistently held:

> If Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal. [Where a] 1925(b) statement [ ] does not specify the allegedly unproven elements[,] ... the sufficiency issue is waived [on appeal].

*Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa.Super.2008), *quoting Commonwealth v. Flores*, 921 A.2d 517, 522–523 (Pa.Super.2007).

In this case, Appellant's Rule 1925(b) statement simply declared, in boilerplate fashion, that the evidence was insufficient to support his conviction. *See* Appellant's Rule 1925(b) Statement, 12/30/14, at 1–2. The statement thus failed to "specify the element or elements upon which the evidence was insufficient" to support Appellant's conviction—and we must conclude that Appellant's sufficiency of the evidence claim is waived on appeal. *Williams*, 959 A.2d at 1257.

Further, it is of no moment that the Commonwealth failed to object to the defect in Appellant's Rule 1925(b) statement.[6] As we have held:

---

**6.** We note that the trial court could not ascertain the sufficiency of the evidence claim (or

claims) Appellant wished to raise on appeal; thus, the trial court considered Appellant's

The Commonwealth's failure [to object to the defect in the Rule 1925(b) statement] and the presence of a trial court opinion are of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a trial court's choice to address an unpreserved claim. [*Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005)], *Commonwealth v. Butler*, 571 Pa. 441, 812 A.2d 631, 634 (2002). Thus, we find 1925(b) waiver where appropriate despite the lack of objection by an appellee and despite the presence of a trial court opinion. *Castillo*, 888 A.2d at 779, 780; *Butler*, 812 A.2d at 634.

*Williams*, 959 A.2d at 1257.

Appellant's final claim on appeal is thus waived.

Judgment of sentence affirmed. Jurisdiction relinquished.

sufficiency of the evidence claim to be waived on appeal. *See* Trial Court Opinion, 1/27/15, at 5 ("[b]ecause [Appellant's] assertions [regarding the sufficiency of the evidence] are entirely void of specificity, they need not be addressed").