J-S96004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THEODORE CAMPBELL, JR., | |
| Appellant | No. 1336 WDA 2015 |

Appeal from the Judgment of Sentence Entered May 28, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010668-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED JANUARY 23, 2017**

Appellant, Theodore Campbell, Jr., appeals from the judgment of sentence of an aggregate term of 20 to 40 years' incarceration, followed by 5 years' probation, imposed after a jury convicted him of attempted murder, aggravated assault, and recklessly endangering another person (REAP).  On appeal, Appellant contends that the jury's verdict was contrary to the weight of the evidence presented at trial.  After careful review, we affirm.

Appellant's convictions stemmed from his shooting Dorrian Glenn during a drug deal.  At Appellant's jury trial, Glenn testified that in April of 2013, he was familiar with Appellant because he would occasionally sell marijuana to Appellant.  N.T. Trial, 2/4/15-2/6/15, at 31-32.[1]  Glenn

_____

[1] We note that this was Appellant's second jury trial.  His first trial, in October of 2014, ended in a mistrial after Dorrian Glenn spontaneously
*(Footnote Continued Next Page)*

explained that on April 24, 2013, he agreed to meet Appellant at an apartment building close to Glenn's home on Landis Street in Philadelphia to sell Appellant "two or three ounces" of marijuana. *Id.* at 32-33, 34. Appellant and Glenn arranged to meet at the second floor apartment belonging to Appellant's cousin. *Id.* at 34.

Glenn testified that he arrived at the apartment unarmed and with the marijuana. *Id.* Appellant let Glenn inside and, as they entered the living room, Appellant and a "second guy … pulled out guns…." *Id.* at 35. Glenn testified that Appellant said, "Throw it off," which Glenn understood to mean "give up what [he] had to them." *Id.* at 35, 65. Glenn "threw [his] hands in the air" and "threw the bag [of marijuana] … on the ground…." *Id.* at 38. Glenn testified that he then "acted like [he] was getting down [on the floor] and then [he] just took off running for … the window." *Id.* Glenn stated that as he ran for the window, Appellant and the second person started shooting. *Id.* at 39. Despite Glenn's being hit by several bullets, he was able to jump through the closed window, shattering the window's glass, and then run to his house where his wife called an ambulance. *Id.* at 39. Glenn sustained gunshot wounds to his chest, leg, and chin, and he also broke both his wrists. *Id.* at 39-40.

_(Footnote Continued)_ ————————————

stated, at the beginning of his testimony, that he did not want to testify because it was putting his family in danger. *See* N.T. Trial, 10/23/14, at 60.

- 2 -

Glenn testified that he did not recall speaking to police officers before being taken to the hospital in an ambulance, but while hospitalized, he was interviewed by police. *Id.* at 40. Glenn admitted that he initially lied to them, telling the officers that he was "jumped somewhere else on Landis Street[.]" *Id.* However, when confronted with the physical evidence indicating the shooting had happened in the second floor apartment, Glenn changed his story. This time, Glenn claimed that three individuals had robbed him "on the landing" of the apartment building, and he had broken away and run through the apartment before jumping out the window. *Id.* at 56. Glenn also gave officers a false description of the three purported robbers. *Id.* at 56-57.

Glenn additionally conceded that he had falsely testified "[a]t a previous hearing … that [he was] actually shot at while on the landing and [he was] robbed by three people…." *Id.* at 42. Glenn explained at trial that he had initially lied to police because "where [he's] from, it's not good to be known as a snitch." *Id.* at 41. Glenn stated that at the time he gave those false accounts, he "didn't want to be part of the investigation, so [he] was pretty much just saying anything." *Id.* He further explained that he has "a wife, four kids and a grandson[,]" and that people know where he lives. *Id.* at 57. Glenn testified that he felt that telling the truth would be "putting people [he] love[s] in danger." *Id.* He also stated that his family members were getting threats from "[d]ifferent people" because Glenn was "snitching." *Id.* at 59. However, at the prompting of his wife, mother, and

father-in-law to "do the right thing," Glenn finally decided to identify Appellant the third time he spoke to police. *Id.* at 58. At that interview, Glenn picked Appellant and his cohort, Anthony Luster, from photographic arrays. *Id.* at 58. On cross-examination, Glenn acknowledged that he was testifying under a grant of immunity by the Commonwealth, so that he would not be prosecuted for attempting to sell marijuana to Appellant. *Id.* at 61, 70.

City of Pittsburgh Police Officer David Sisak also testified for the Commonwealth. He stated that he was working on April 24, 2013, and he responded to the report that Glenn had been shot. *Id.* at 73. Officer Sisak testified that when he asked Glenn how he had been shot, Glenn said he was "just walking down the sidewalk and two guys robbed him for no reason." *Id.* at 74. Officer Sisak then went to the apartment building at 3111 Landis Street and saw some bullet casings and glass on "a small sidewalk that goes along the building…." *Id.* at 75, 76. Officer Sisak determined that the glass "came from an upstairs window." *Id.* at 75. Officer Sisak went to the second floor apartment where the broken window was located. *Id.* at 79-80. In that apartment, the officer observed "more shell casings, and the windowsill was shot. … And the window was smashed out…." *Id.* at 80.[2]

_____

[2] The parties stipulated that a total of 12 cartridge casings were found at the scene, and that the casings were fired by two different, 9-millimeter guns. *Id.* at 102-103.

Officer Sisak testified that he returned to Glenn's home and told him that the physical evidence did not align with his story that he was shot on the street. *Id.* at 81. Glenn then changed his story and admitted he was shot in the apartment.

Appellant also testified at his trial. He explained that he contacted Glenn on April 24, 2013, to purchase marijuana. *Id.* at 119. He testified that he agreed to meet Glenn at his cousin's apartment at 3111 Landis Street. *Id.* at 121, 122. Anthony Luster accompanied Appellant to the apartment. *Id.* at 121. Appellant testified that Glenn knocked on the apartment door and Appellant told him to come inside. *Id.* at 125, 126. Appellant stated that after he handed Glenn the money for the marijuana, Glenn started to hand Appellant a bag that looked empty. *Id.* at 126. According to Appellant, Glenn then reached into his pants pocket and pulled out a gun. *Id.* at 127-128. Appellant then pulled out his gun and, as the two men were pointing their guns at each other, "a shot went off." *Id.* at 129, 130, 131. Appellant testified that he did not know who fired the first shot, but he began shooting as he ran into the bathroom. *Id.* at 131, 137. After the shots stopped, Appellant and Luster ran out of the apartment building. *Id.* at 137-138. Appellant testified that he never tried to steal from Glenn, and he claimed that he had had no intention of killing Glenn or causing him harm. *Id.* at 138.

At the conclusion of Appellant's trial, the jury convicted him of the above-stated offenses. On May 28, 2015, the court sentenced him to an

aggregate term of 20 to 40 years' imprisonment, followed by 5 years' probation. He filed a timely post-sentence motion challenging the weight of the evidence supporting his convictions, which the court denied. Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant raises one issue for our review:

> I. Did the trial court abuse its discretion by failing to find that the guilty verdict was against the weight of the evidence when the testimony presented by the only Commonwealth eyewitness was inconsistent and so untrustworthy that to base a verdict on this evidence was manifestly unreasonable?

Appellant's Brief at 5 (unnecessary capitalization and emphasis omitted).

> To begin, we note that,

> [a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-1136 (Pa. 2011) (citations and internal quotation marks omitted).

- 6 -

Here, Appellant contends that the trial court abused its discretion by rejecting his weight-of-the-evidence claim, where Glenn's testimony "was inconsistent and incredible." Appellant's Brief at 15. Appellant stresses that

> Glenn was the only Commonwealth eyewitness to testify at trial regarding the events that occurred in the apartment and he was the only eyewitness who refuted [Appellant's] claim of self-defense. However, [] Glenn was extremely unreliable since he continued to lie about what occurred and he admittedly presented false testimony under oath in a prior court proceeding.

*Id.* at 16. Appellant also argues that his claim of self-defense was supported by statements he made during a recorded prison phone call to a female friend. According to Appellant, in light of that evidence supporting his claim of self-defense, and the unreliability of Glenn's testimony, the court should have granted him a new trial.

After assessing the evidence presented at Appellant's trial - and considering, in particular, the testimony of Dorrian Glenn - we disagree with Appellant that the court abused its discretion by denying his weight-of-the-evidence claim. Admittedly, Glenn changed his account of the shooting at least three times during the investigation, and he also admitted that he lied under oath at a prior court proceeding. Additionally, Glenn was testifying under a grant of immunity by the Commonwealth. However, the jury was informed that Glenn only agreed to testify after being granted immunity, and both defense counsel and the Commonwealth questioned Glenn extensively about the fabricated stories he had provided to police during the investigation. Glenn explained that he initially lied to police because he did

not want to be known as a 'snitch.' He also stated that he feared for the safety of his family, especially because some of his family members had received threats.

In sum, the jury was clearly informed of the issues surrounding Glenn's credibility, yet it chose to believe his testimony over that of Appellant.[3] In rejecting Appellant's weight-of-the-evidence claim, the trial court declined to disturb that credibility determination by the fact-finder. **See** Trial Court Opinion, 8/17/16, at 11. We ascertain no abuse of discretion in the trial court's decision. **See Commonwealth v. Boxley**, 838 A.2d 608, 612 (Pa. 2003) (declining to "disturb the finder of fact's credibility determinations" where the appellant had "raised [the] credibility issues at trial, and they were weighed and rejected by the jury in reaching its verdict").

Judgment of sentence affirmed.

_____

[3] Moreover, contrary to Appellant's argument, the jury was free to reject his testimony that he acted in self-defense, even if statements he made in a recorded prison phone call supported that claim. A transcription of Appellant's prison phone call was made, and is cited by Appellant in his brief to this Court, but it is not contained in the certified record. **See** N.T. Trial at 104; Appellant's Brief at 21-23. "In general, it is an appellant's burden to ensure that the certified record contains the documents reflecting the facts needed for review." **Commonwealth v. Wrecks**, 931 A.2d 717, 722 (Pa. Super. 2007) (citation omitted). In any event, even accepting that the prison phone call supported Appellant's trial testimony that he shot Glenn in self-defense, the jury was free to reject *both* the statements he made during the phone call *and* his testimony at trial.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2017