J-S04023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY LYN HOLLENSHEAD :
:
Appellant : No. 697 MDA 2018

Appeal from the Judgment of Sentence April 3, 2018
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-CR-0000107-2015

BEFORE: SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.: **FILED APRIL 26, 2019**

Anthony Lyn Hollenshead appeals from the judgment of sentence imposed April 3, 2018, in the Fulton County Court of Common Pleas. The trial court sentenced Hollenshead to two consecutive terms of life imprisonment, following his jury conviction of two counts of first-degree murder[1] for the shooting death of his wife and stepdaughter. On appeal, Hollenshead argues the evidence was insufficient to support his convictions of first-degree murder, when he presented ample evidence to establish he acted under the mistaken belief the shootings were justified. For the reasons below, we affirm.

The trial court provided a thorough and detailed recitation of the trial testimony in its opinion, which we need not reiterate herein. ***See*** Trial Court

_____

* Former Justice specially assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. § 2502(a).

Opinion, 6/28/2018, at 3-25. In summary, during the early morning hours of May 5, 2015, Hollenshead shot and killed both his wife, Laura Hollenshead, and his stepdaughter, Jaedi Weed, with a 20-gauge shotgun. Although Hollenshead's other daughter and stepdaughters described him as an abusive and controlling husband and father, he claimed he was the victim of physical abuse by his wife. Moreover, while admitting he fired the shotgun that killed Laura and Jaedi, Hollenshead testified that both victims attacked him first, striking him with a wooden board, a wrench, and a flashlight. He claimed he shot Laura first accidentally, while struggling over the shotgun, and then again as she approached him with a wrench in her hand. *See* N.T. 1/26/2018, at 47. Hollenshead testified he then shot Jaedi because she was pointing a rifle at him and screaming that she was going to kill him. *See id.* at 47-48.

As noted *supra*, Hollenshead was charged with two counts of first-degree murder. The case proceeded to a jury trial, and on January 29, 2018, the jury returned a verdict of guilty on both charges. Thereafter, on April 3, 2018, the trial court sentenced Hollenshead to two consecutive, mandatory terms of life imprisonment. This timely appeal followed.[2]

Hollenshead's sole issue on appeal is a challenge to the sufficiency of the evidence supporting his convictions. Our standard of review is well-established:

---

[2] Hollenshead complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 2 -

Evidence legally is sufficient when, viewed in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences derived therefrom are sufficient to enable a reasonable fact-finder to find all of the elements of first-degree murder beyond a reasonable doubt. In conducting this inquiry, we must evaluate the entire trial record. In addition, "the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence."

*Commonwealth v. Clemons*, 200 A.3d 441, 462 (Pa. 2019) (internal citations omitted).

In order to convict a defendant of first-degree murder, the Commonwealth must prove "a human being was unlawfully killed; the defendant was responsible for the killing; and the defendant acted with malice and a specific intent to kill." *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011), *cert. denied*, 526 U.S. 1247 (2012). *See also* 18 Pa.C.S. § 2502(a). The Commonwealth may satisfy its burden of proof by circumstantial evidence. *See Houser*, *supra*, 18 A.3d at 1133. Moreover, the fact finder may infer the defendant acted with both malice and a specific intent to kill when he uses a deadly weapon on a vital part of the victim's body. *See id.* at 1133-1134 (quotation omitted).

However, pursuant to 18 Pa.C.S. § 2503(b), "an intentional killing is voluntary manslaughter if committed as a result of an unreasonable belief in the need for deadly force in self-defense." *Commonwealth v. Washington*, 692 A.2d 1024, 1029 (Pa. 1997), *cert. denied*, 523 U.S. 1006 (1998).

In explaining what elements are necessary to establish unreasonable belief voluntary manslaughter, which is sometimes

referred to as "imperfect self-defense," [the Supreme Court has] stated:

> This self-defense claim is imperfect in only one respect-an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must [still be met in order to establish] unreasonable belief voluntary manslaughter.

> ***Commonwealth v. Tilley***, 528 Pa. 125, 595 A.2d 575, 582 (1991). In order to establish the defense of self-defense under 18 Pa.C.S. § 505, the defendant must not only show that he was protecting himself against the use of unlawful force but must also show that he was free from fault in provoking or continuing the difficulty which resulted in the killing. ***See*** 18 Pa.C.S. § 505; ***Tilley***, 595 A.2d at 581.

***Commonwealth v. Bracey***, 795 A.2d 935, 947 (Pa. 2001) (footnote omitted). Furthermore, we note that "[i]f a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Houser***, ***supra***, 18 A.3d at 1135. Nevertheless, "a jury is not required to believe the testimony of the defendant who raises the claim." ***Id.***, *quoting* ***Commonwealth v. Carbone***, 574 A.2d 584, 589 (Pa. 1990).

Here, Hollenshead argues "[t]he evidence presented in this case, even in the light most favorable to the Commonwealth, was insufficient to disprove [he] was not acting in a sincere, albeit possibly mistaken, belief that his life was being threatened by the victims in this case." Hollenshead's Brief at 18. He emphasizes that in "multiple audio recorded interviews" he claimed the victims attacked him with a "2x3 piece of wood" and two different wrenches, all of which were recovered at the scene. ***Id.*** at 19. Furthermore, Hollenshead

maintains his assertion that Jaedi was pointing the rifle at him when he fired the shotgun at her, was supported by the testimony of Trooper Todd Neumyer, the Commonwealth's own forensic firearm and tool mark examiner. **See id.** at 19-20. He contends Trooper Neumyer acknowledged there was a "small ding" on the rifle, that could have resulted from being hit by a shotgun pellet, and the trooper observed blood on the rifle that was never sent for testing. N.T., 1/25/2018, at 42, 54-55. Accordingly, Hollenshead argues he should have been convicted only of voluntary manslaughter.

Preliminarily, we note the trial court initially found this claim waived based upon Hollenshead's vague reference to a sufficiency claim in his concise statement. **See** Trial Court Opinion, 6/28/2018, at 26-27. We are constrained to agree.

This Court has held that when a defendant seeks to challenge the sufficiency of the evidence on appeal, he must "specify the element or elements upon which the evidence was insufficient." **Commonwealth v. Tyack**, 128 A.3d 254, 260 (Pa. Super. 2015) (quotation omitted). The failure to do so, results in waiver of the claim on appeal. **See id.** This is true regardless of whether the Commonwealth objected to the defect or the trial court ultimately addressed the claim in its opinion. **See id.** at 261. **Accord Commonwealth v. Roche**, 153 A.3d 1063 (Pa. Super. 2017) (finding defendant's challenge to the sufficiency of the evidence supporting his conviction of first-degree murder and conspiracy waived when he failed to

"specify the element or elements … with regard to which he deems the evidence was insufficient to sustain a conviction").

Here, Hollenshead's concise statement reads as follows:

Whether the evidence presented was sufficient for a jury to find Anthony L. Hollenshead guilty of two (2) counts of Murder in the First Degree?

Hollenshead's Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b). Noticeably absent from his statement is any reference to the sole issue on appeal, that is, his claim that the evidence supported his claim of "imperfect" self-defense. Accordingly, we find this issue waived.[3]

Nevertheless, even assuming *arguendo* Hollenshead's challenege was not waived, we would affirm on the basis of the trial court's opinion. On this specific argument, the court stated:

[Hollenshead] asked the jury to believe he acted in self-defense. However, his defense was just simply not credible. Not only did the physical evidence belie his claim, but his own inconsistent and ever-changing claims demonstrated the lack of credibility of his defense. From the first version of events he reported to Trooper Lear in the back of the patrol vehicle to the recorded statements he gave to Trooper Clemens to the final version he offered the jury at trial, [Hollenshead's] story changed dramatically regarding key elements. For example, his explanation of how Laura came to be in possession of the shotgun (from she got it from the cabinet, to she wrestled it from [Hollenshead], to [Hollenshead] gave it to her so she could kill

_____

[3] Pursuant to **Tyack** and **Roche**, the fact that the Commonwealth failed to object to this deficiency and the trial court later addressed Hollenshead's claim in its opinion, is of no moment. **See Tyack**, **supra**, 128 A.3d at 261; **Roche**, **supra**, 158 A.3d at 1072.

herself …) changed significantly. The location of the rifle from the time the girls first observed a distance from the bodies to the time the police found it lying next to Jaedi's body changed – and not just because Haley carried it inside.[4]  Also of interest was [Hollenshead's] admission at trial to engaging in a sexual relationship with Jaedi, something [he] had not disclosed at any time prior.  Certainly the jury was able to consider all of these things not only to assess the Commonwealth's evidence in meeting its burden, but also in evaluating the witnesses' and [Hollenshead's] credibility.

. . . .

The jury's verdict suggests they did not believe [Hollenshead's] testimony regarding the events of May 4, 2015.

Trial Court Opinion, 6/28/2018, at 29-30.  We remind Hollenshead that although he may testify he acted in self-defense, a jury is not obligated to believe his testimony, particularly when his story changed over time, and his version of events is is belied by physical evidence.  **See Houser**, **supra**.  Accordingly, even if Hollenshead had not waived this claim, he would be entitled to no relief.

_____

[4] Hollenshead's stepdaughters, Stephanie and Haley Weed, testified they were inside the house at the time of the shooting, and ran outside after hearing gunshots and Jaedi's screams.  **See** N.T., 1/22/2018, at 80-81, 128.  They were confronted by Hollenshead, who admitted he shot Laura and Jaedi.  **See id.** at 81, 128.  Haley stated that outside, she saw a rifle lying about 30 to 40 feet from the bodies.  **See id.** at 130-131.  She eventually picked it up, took it inside, and laid it on Hollenshead's bed.  **See id.** at 131, 153.  Soon thereafter, Stephanie and Haley fled on foot, until they were able to flag down a truck to drive them to the police station.  **See id.** at 85-88, 132-133.  When Corporal Derek Johnson of the Pennsylvania State Police arrived on scene, the rifle was lying near Jaedi's body.  **See** N.T., 1/24/2018, at 9, 13-14.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2019