978 A.2d 956

COMMONWEALTH OF PENNSYLVANIA, Appellee

v.

Anthony J. DICK, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 23, 2008.

Decided Aug. 18, 2009.

Hugh L. Sumner, Esq., Caroline Roberto, Esq., Columbia County Public Defender's Office, Berwick, for Anthony Dick, J.

Amy Zapp, Esq., Kelley Lynn Nelson, Esq., PA Office of Attorney General; Gary Eugene Norton, Esq., Columbia County District Attorney's Office, for Commonwealth of Pennsylvania.

CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

*OPINION*

Justice EAKIN.

This is a direct appeal from a death sentence imposed following appellant's conviction on two counts of first degree murder.[1] Appellant pled guilty to killing his two children and waived his right to a penalty phase jury and to presentation of mitigating evidence. At the penalty phase, the trial court found three aggravating circumstances and no mitigating circumstances, and sentenced appellant to death. Appellant did not appeal until after the appeals period had lapsed; this case is now before this Court upon automatic review pursuant to 42 Pa.C.S. § 9711(h)(1).[2] We affirm the convictions of first de-

1. 18 Pa.C.S. § 2502(a).

2. "A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules." 42 Pa.C.S. § 9711(h)(1).

gree murder and the sentence of death.

Appellant was living in Room 31 of the Stone Castle Motel with his wife, Betty, 19–month–old son, James, and four-year-old stepson, Creed Vincent. In the early morning hours of January 24, 2006, appellant was watching television and drinking beer as the rest of the family slept.[3] Seemingly unprovoked, appellant retrieved a .22 caliber handgun and shot each of his family members twice—once in the head and once in the chest or back. Appellant then turned the gun on himself and shot himself in the stomach.

The two children died instantaneously, but Betty Dick miraculously survived. Upon waking, she was unaware of her injuries, but had trouble breathing and seeing. She called out for her husband, who told her to let him die. Unable to find the telephone, she felt her way out of the hotel room and over to the adjacent room. The neighbor called an ambulance, and police arrived shortly thereafter.

Appellant waived his *Miranda*[4] rights and confessed to police that he shot his wife and two children while they slept. He told police he had thought about killing his family for months, he was not sorry for what he had done, and he felt "absolutely nothing" when he pulled the trigger. Upon being told his wife survived, he stated he wished she had died.[5] Appellant further stated he meant to plead guilty and hoped to be executed for his crimes. Appellant was charged with two counts of first degree murder, attempted murder, and aggravated assault.[6]

---

3. Appellant drank six beers over the course of four hours and was not under the influence of any medications or illegal drugs.

4. *Miranda v. Arizona*, 384 U.S. 436, 478–79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Appellant told police he was upset with his wife for obtaining a Protection From Abuse (PFA) order against him. He also stated he and his wife had argued at some time prior to the murders, though he did not remember exactly what the argument was about.

6. As part of appellant's plea bargain, the attempted murder and aggravated assault charges were *nolle prosequied*. *See* Written Guilty Plea Colloquy, 8/22/07, at 1.

On August 22 and 23, 2007, a plea and sentencing hearing was held. Prior to the plea phase, Dr. Richard Fishbein, an adult geriatric and forensic psychiatrist, presented his examination report of appellant. Dr. Fishbein opined, within a reasonable degree of medical certainty, that appellant had a low intelligence quotient and a schitzoid personality, but was competent to fully participate in and understand the trial proceedings. Appellant testified he had the ability to participate in and understand the proceedings; the defense and prosecuting attorneys also agreed appellant was competent to stand trial. Following thorough discussion with Dr. Fishbein and appellant, the trial court found appellant competent to participate in the proceedings.

During the plea phase of the hearing, appellant waived his right to a jury trial, and pled guilty to all charges, telling the court he shot each of his family members twice with the intent to kill them, and that he had thought about killing them for some time. Following an extensive colloquy, the trial court accepted the plea as knowingly, intelligently, and voluntarily entered.

Appellant stated he wished to proceed directly to sentencing, and waived his right to a jury at the penalty phase, orally and in writing. Following another lengthy colloquy, the trial court accepted the waiver as knowing, intelligent, and voluntary; the waiver was certified by defense counsel, the deputy attorney general, and the trial court. Despite being informed by the trial court that failure to present mitigating evidence would likely result in a death sentence, appellant waived his right to present mitigating evidence at the penalty phase.[7]

7. Appellant's trial attorneys proffered the evidence they would have presented had not appellant specifically directed them not to do so. The evidence included expert testimony regarding appellant's mental status, mental health status, any diagnosis which may have been considered mitigating evidence, and mitigating evidence concerning appellant's character, record, and the accompanying circumstances of the offense. They also indicated they would have taken steps to discover evidence that would have benefited appellant's mitigation case, including consulting with a mitigation specialist, presenting medical tests performed on appellant, and calling witnesses to attest to appellant's

Following another extensive colloquy, the trial court found the waiver to be knowingly, intelligently, and voluntarily made.

During the penalty phase, the Commonwealth called a number of witnesses who attested to the nature of appellant's actions. Among the witnesses were the police officers who were on duty the night of the incident; they testified about the crime scene, the victims' conditions, and appellant's confessions. Trooper Elwood Spencer, a firearms expert, testified the .22 caliber handgun found at the scene could fire a bullet with sufficient velocity and mass to penetrate a human being. Dr. Samuel Land, an expert in forensic pathology, testified that both Creed Vincent and James Dick died of intermediate range gunshot wounds to the head and chest. He stated the chest wounds were fatal, and each child would have died within seconds to minutes with those wounds alone; however, due to the shots to the head, their deaths were likely immediate.

Betty Dick also testified, corroborating the officers' testimony and appellant's confessions. Betty remains permanently disabled as a result of the gunshot wounds she sustained. She has no peripheral vision in her left eye, suffers chronic headaches, and will require continued treatment for symptoms associated with her injuries—including the eventual installation of a metal plate in her head. Dr. Joseph Williams, the neurological surgeon who performed surgery on Betty, stated bone fragments still remain in her skull, and a bullet still resides in her chest. He indicated these defects could cause additional problems in the future, including seizures, lung function problems, and pulmonary disease.

After reviewing the Commonwealth's evidence, the trial court found three aggravating circumstances: (1) during the commission of the offense, appellant knowingly created a grave risk of death to another person in addition to the victim, 42 Pa.C.S. § 9711(d)(7); (2) appellant was convicted of another murder committed in any jurisdiction before or at the time of the offense, id., § 9711(d)(11); and (3) the victim was a child

character as a hard-working and compassionate man. *See* N.T. Plea and Sentencing Hearing, 8/23/07, at 186–87.

under 12 years of age, *id.*, § 9711(d)(16). The court found no mitigating circumstances and accordingly sentenced appellant to death.

Initially, appellant indicated he did not wish to appeal his sentence. However, after the appeal filing date lapsed, appellant notified post-trial counsel of his desire to appeal. A motion to allow appeal *nunc pro tunc* and a petition to allow filing of post-sentence motions *nunc pro tunc* were filed with this Court; each were denied.

In all cases in which the death penalty is imposed, this Court has an obligation to review the record to ensure the evidence sufficiently supports the first degree murder conviction and the finding of aggravating circumstances, and that the sentence was not the product of passion, prejudice, or other arbitrary factors. 42 Pa.C.S. § 9711(h)(3)(i),(ii); *see also Commonwealth v. Baumhammers,* 599 Pa. 1, 960 A.2d 59, 68 (2008) ("In all death penalty direct appeals ... this Court reviews the evidence to ensure that it is sufficient to support the conviction or convictions of first-degree murder.").

Appellant raises four additional claims in his brief:
1. The trial court erred by imposing the death penalty because the Commonwealth did not establish the elements necessary to sustain a conviction of first degree murder.
2. Appellant's plea was not entered knowingly, voluntarily, and/or intelligently.
3. Appellant was not competent or did not have sufficient mental capacity to enter a guilty plea to murder and/or to waive his right to present mitigating evidence in the penalty phase.
4. Appellant's refusal to present mitigating evidence is analogous to a stipulation of death and is therefore unconstitutional.

However, as appellant did not timely file his appeal, any claims unassociated with the statutorily-mandated review of the sufficiency of the evidence have not been previously raised or preserved for appeal, and thus are not properly before this

Court. We have already considered and denied appellant's requests for *nunc pro tunc* relief, and relaxed waiver no longer applies in capital appeals. *See Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 402 (2003) (claims not properly raised and preserved in trial court are waived and unreviewable on capital direct appeals).[8] Therefore, we will not consider appellant's additional claims, and our review consists only of an independent evaluation of whether sufficient evidence exists to support appellant's first degree murder convictions.

In reviewing the sufficiency of the evidence, we must determine whether the evidence at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, is sufficient to establish all elements of the offense beyond a reasonable doubt. *Baumhammers*, at 68; *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 864 (2000).

A person is guilty of first degree murder where the Commonwealth proves: (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. *See* 18 Pa.C.S. § 2502(a); *Baumhammers*, at 68 (quoting *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 651–52 (2008)). Intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. § 2502(d). "The Commonwealth may prove that a killing was intentional solely through circumstantial evidence. The finder of fact may infer that the defendant had the specific intent to kill the victim based on the defendant's use of a deadly weapon upon a vital part of the victim's body." *Commonwealth v. Blakeney*, 596 Pa. 510, 946 A.2d 645, 651 (2008).

Appellant argues the Commonwealth failed to establish his actions were intentional, averring he acted in the heat of passion or as a result of temporary insanity, and thus his

8. We note appellant's "claims may be pursued under the PCRA, as claims sounding in trial counsel's ineffectiveness or, if applicable, a statutory exception to the PCRA's waiver provision." *Freeman*, at 402.

actions were not willful, deliberate, or premeditated. Essentially, appellant maintains his actions are not worthy of a first degree conviction, but rather the lesser sentence of voluntary manslaughter. *See* 18 Pa.C.S. §§ 2502(a) & (d), 2503(a); *see also Commonwealth v. Laich*, 566 Pa. 19, 777 A.2d 1057, 1061 (2001) (defendant guilty of voluntary manslaughter if at time of killing defendant acts under sudden and intense passion resulting from serious provocation).

We find the Commonwealth independently established each element necessary to sustain appellant's first degree murder convictions. The Commonwealth produced numerous witnesses who testified as to the horrific conditions of the crime scene and appellant's multiple admissions of guilt. It further presented expert testimony indicating Creed Vincent and James Dick died from close-range gunshot wounds to vital body parts—the head and chest or back—and established these wounds were capable of being inflicted by the type of gun found in the room. Moreover, the Commonwealth verified only four people were present in the room the evening of the incident: Betty Dick testified no one else was in the room that evening, and she had to unlock the door to get to the neighboring room, thus eradicating any suspicion the wounds were inflicted by an intruder.

Beyond this substantial circumstantial evidence, the convictions are supported by appellant's own admissions of guilt. On multiple occasions he admitted he shot and killed Creed Vincent and James Dick, and that he did so intentionally and with forethought. He expressed no remorse, and intelligently, voluntarily, and knowingly pled guilty to first degree murder, even after extensive colloquy and ample opportunity to consider the consequences of such a decision.

The evidence, and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth, satisfy each element of first degree murder: (1) Creed Vincent and James Dick were deliberately killed without legal justification; (2) appellant was the person responsible for their deaths; and (3) appellant shot each victim twice in vital body

parts, supporting a finding of a specific intent to kill. *See Blakeney,* at 651.

Appellant provides no evidence to support the contention his actions were taken in the heat of passion or were a result of temporary insanity, and therefore unintentional. It is clear the relationship between appellant and his wife was tumultuous, given she had obtained a PFA order against him and the couple allegedly had an argument sometime prior to the incident. This is, however, clearly insufficient to establish "heat of passion," which involves such emotions as anger, rage, sudden resentment, terror, or other emotions rendering the mind incapable of reason at the time of the act. *See Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 396–97 (1999). The record is devoid of any evidence suggesting emotional upheaval or provocation caused by the victims—primarily because all the victims were sleeping at the time of the attack. Moreover, appellant testified he thought about killing Betty and the children for several months, and after committing the murders, he stated he felt no remorse for his decision to murder his family. Such admissions clearly negate any argument appellant raises that his actions were sudden impulses resulting from uncontrollable rage.

Similarly, the record does not lend itself to a determination appellant was suffering from a mental illness at the time of the killing. We note this lack of evidence is perhaps because appellant instructed his trial attorneys not to present mitigating evidence on his behalf; however, we are bound by the record before us, and all examinations and colloquies of record suggest appellant was competent and aware of his own actions. As appellant offers nothing but a mere assertion that he has a history of mental illness, we are left with nothing further to consider, and conclude the facts and record support the trial court's conclusion that appellant murdered his children willfully, deliberately, and with premeditation. We therefore find the Commonwealth presented sufficient evidence to establish each of the necessary elements of first degree murder.

We next consider the sufficiency of the evidence supporting the trial court's finding of aggravating circumstances. 42 Pa.C.S. § 9711(c) provides:

> [T]he verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

*Id.*, § 9711(c)(1)(iv).

As previously stated, the trial court found three aggravating circumstances in each of the two murder cases: appellant, in the commission of the offense, knowingly created a grave risk of death to another person in addition to the victim; appellant had been convicted of another murder committed in any jurisdiction before or at the time of the offense; and the victim was a child under the age of 12. *See* 42 Pa.C.S. § 9711(d)(7), (11), & (16). Appellant chose not to present any mitigating circumstances, and the trial court sentenced him to death, as required by 42 Pa.C.S. § 9711(c)(1)(iv).

Upon reviewing the evidence, we find acknowledging these aggravating circumstances is unavoidable. Appellant clearly created a grave risk of death to Betty Dick by shooting James and Creed multiple times in close proximity to her while the three were sleeping in the same hotel room. Even more inescapable is the fact appellant committed two murders at the same time, and each victim was a child under the age of 12. As three aggravating circumstances were clearly present, and no mitigating evidence was presented to counter-balance these factors, under mandate of law the court was required to impose the death penalty, and accordingly did not err in doing so.[9]

9. We note the death penalty is not unconstitutionally imposed upon a defendant who refuses to offer any mitigating evidence. *See Commonwealth v. Frey*, 588 Pa. 326, 904 A.2d 866, 874 (2006) (sentencer may not be precluded from considering mitigating evidence, but defendant is not constitutionally required to present mitigating evidence).

Our review of the record establishes the evidence supports appellant's first degree murder convictions. We additionally find the Commonwealth presented evidence that established the aggravating circumstances beyond a reasonable doubt. The presence of these aggravating circumstances, absent any mitigating evidence, supports the trial court's imposition of the death penalty. Furthermore, we find the sentence imposed was not the product of passion, prejudice, or any other arbitrary factor, and therefore affirm the verdict and the sentence of death imposed by the trial court.

The Prothonotary of the Supreme Court of Pennsylvania is directed to transmit the complete record of this case to the Governor of Pennsylvania. 42 Pa.C.S. § 9711(i).

Judgment of sentence affirmed.

Jurisdiction relinquished.

Chief Justice CASTILLE, and Justice SAYLOR and BAER, Justice TODD, Justice McCAFFERY and Justice GREENSPAN join the opinion.