J-A10033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONOVAN REMEKIE | : | |
| | : | |
| Appellant | : | No. 737 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 12, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  Cp-51-CR-0010866-2017


BEFORE:   BOWES, J., SHOGAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JULY 21, 2020**

Appellant, Donovan Remekie, appeals from the judgment of sentence

entered on February 12, 2019, in the Court of Common Pleas of Philadelphia

County.  We affirm.

The trial court summarized the procedural history of this case as follows:

> On November 15, 2017, [Appellant], was arrested and
> charged with Murder and related offenses.  On February 1, 2019,
> [Appellant] appeared before [the trial court], waived his right to
> a jury trial, and elected to proceed with a bench trial.[1]  On
> February 12, 2019, [the trial court] found [Appellant] guilty of
> First-Degree Murder and Possession of an Instrument of Crime
> ("PIC").[1]  On the same date, [the trial court] imposed the
> mandatory sentence for First-Degree Murder of life imprisonment
> without parole.[2]  On February 22, 2019, [Appellant] filed a Post-
> Sentence Motion, which [the trial court] denied on March 1, 2019.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) and 907(a).

> ¹ [The trial court] bifurcated the bench trial so two motions could be reviewed by another judge. On February 1, 2019, the Honorable Glenn B. Bronson heard argument on [Appellant's] Motion in Limine to Exclude Certification of Service. On February 11, 2019, Judge Bronson granted [Appellant's] Motion in Limine. On that same date, Judge Bronson also denied the Commonwealth's Motion to Amend the Bills of Information.
>
> ² [The trial court] imposed no further penalty for PIC. [Appellant] waived his right to a pre-sentence investigation and mental health report. [The trial court] determined that it had sufficient information to proceed to sentencing.

On March 8, 2019, [Appellant] filed a timely Notice of Appeal. On March 11, 2019, [the trial court] ordered [Appellant] to file a Concise Statement of Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b), which [Appellant] timely filed on April 1, 2019.³

> ³ On April 1 and 17, 2019, [the trial court] granted [Appellant's] requests for extension of time to supplement his 1925(b) Statement because the Notes of Testimony were not yet completed. On April 9, 2019, [Appellant] filed a supplement to his 1925(b) Statement with a request to supplement further. On April 17, 2019, [Appellant] informed [the trial court] that he did not plan to further supplement his Statement.

Trial Court Opinion, 5/7/19, at 1-2. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following issue for our review:

Was not the evidence insufficient to convict [Appellant] of Murder in the First Degree where the evidence at trial failed to prove that he acted with premeditation and malice aforethought and his unrebutted testimony demonstrated that he was acting under a sudden and intense passion resulting from serious provocation by

- 2 -

the decedent and hence was guilty of voluntary manslaughter only?

Appellant's Brief at 3. Specifically, Appellant argues that although the trial court found that the evidence was sufficient to establish murder in the first degree because it established the intent to kill, "premeditation, <u>not</u> the intent to kill, is the defining element that separates first degree murder from other kinds of murder, including voluntary manslaughter." *Id.* at 15 (emphasis in original). Furthermore, Appellant maintains that the evidence proving that he acted in the heat of passion, under extreme provocation from the decedent, establishes a "partial defense" to first-degree murder and establishes guilt of voluntary manslaughter only. *Id.* at 15-16.

The standard of review for the sufficiency of the evidence is as follows:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

*Commonwealth v. Woodard*, 129 A.3d 480, 489-490 (Pa. 2015) (internal citation and quotation marks omitted).

In order to sustain a conviction of first-degree murder, we must conclude that the evidence established beyond a reasonable doubt the three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted

with malice and a specific intent to kill. 18 Pa.C.S. § 2502(a); *Commonwealth v. Houser*, 18 A.3d 1128, 1133 (Pa. 2011). "An intentional killing is one committed by means of poison, lying in wait, or by any other kind of willful, deliberate, and premeditated action." *Commonwealth v. Rega*, 933 A.2d 997, 1009 (Pa. 2007); 18 Pa.C.S. § 2502(a), (d).

In the case *sub judice*, Appellant asserts that the third element has not been established by the Commonwealth. Appellant contends that premeditation, and "not the intent to kill, is the defining element that separates first degree murder from other kinds of murder, including voluntary manslaughter." Appellant's Brief at 15.

As noted above, "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S. § 2502(a). The Commonwealth can prove the specific intent to kill through circumstantial evidence. *Commonwealth v. Drumheller*, 808 A.2d 893, 908 (Pa. 2002). Further, our Supreme Court has repeatedly determined that "[t]he use of a deadly weapon on a vital part of the body is sufficient to establish the specific intent to kill." *Rega*, 933 A.2d at 1009; *see also Commonwealth v. Cousar*, 928 A.2d 1025, 1034 (Pa. 2007) ("[A] specific intent to kill may be inferred from the use of a deadly weapon on a vital part of the victim's body.").

The trial court addressed this issue as follows:

> This [c]ourt, as factfinder, concluded that [Appellant], with the specific intent to kill, murdered [the decedent]. In total, [Appellant] brutally stabbed [the decedent] seventeen times. He slashed her throat so viciously that he practically severed her neck

from her body and with such force that the knife was embedded in her neck, requiring rigorous effort from the medical examiner to extract the murder weapon. In the weeks leading up to the murder, [Appellant's] relationship with the decedent had become tumultuous and volatile. After [the decedent] filed for divorce, [Appellant] threatened her numerous time via text message and researched the implications that a divorce would have on his immigration status. [Appellant's] decision to call out of work on the night of the killing further demonstrates his premeditation, deliberation, opportunity, and planning, as he waited until the middle of the night before striking her. [Appellant] himself testified that he stabbed the decedent multiple times and that he did not stop until he felt ashamed and worried. His use of the knife on vital body parts of the decedent show that he had the specific intent to kill as well as the requisite malice for First-Degree Murder.

Trial Court Opinion, 5/7/19, at 6-7.

The trial court's summation of the evidence is accurate and comports with the record. Appellant did not deny stabbing the decedent. Indeed, he testified that he stabbed her multiple times before stopping. N.T., 2/12/19, at 112. The medical examiner testified that the decedent suffered seventeen stab and incised wounds. *Id.* at 5. In describing the seventeen wounds, the medical examiner explained that at least three of the wounds were inflicted on vital body parts, and individually, not in combination with the other wounds, they would have been potentially fatal. *Id.* at 13. Specifically, the evidence established, *inter alia*, that Appellant slashed the decedent's throat "caus[ing] perforations of her jugular vein or corotid artery, her thyroid and her larynx or her voicebox," stabbed her in the back right shoulder causing "a perforation of her right brachiocephalic vein, which is one of the larger veins that connects the neck to the heart," and stabbed her in the back of the neck

"caus[ing] a perforation of her cervical spine, her vertebrae, and caus[ing] bleeding around her spinal cord, referred to as epidural hemorrhage." *Id.* at 6-8. Appellant's use of the knife on the decedent's vital body parts establishes the specific intent to kill required for conviction of first-degree murder. *Rega*, 933 A.2d 1009. Thus, the trial court did not err in concluding that there was sufficient evidence establishing the conviction for first-degree murder.

Further, we find no merit to Appellant's claim that the evidence supports a conviction for voluntary manslaughter instead of first-degree murder because he acted under a sudden and intense passion resulting from serious provocation by the decedent. As our Supreme Court has explained:

> A heat of passion defense is a partial defense that addresses the element of intent and, if successfully argued, mitigates first-degree murder to third-degree murder. *See Com. v. Hutchinson*, 611 Pa. 280, 25 A.3d 277, 314 (2011). It seeks to show that the defendant is guilty of voluntary manslaughter, not murder, by proving that at the time of the killing he or she was acting under a sudden and intense passion resulting from serious provocation by the victim. *See* 18 Pa.C.S. § 2503(a) ("[a] person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by ... the individual killed.").

*Commonwealth v. Mason*, 130 A.3d 601, 627-628 (Pa. 2015).

In addressing this issue, the trial court explained:

> In order to successfully argue heat-of-passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man who was confronted with the provoking events would become "impassioned to the extent that his mind was incapable of cool reflection," and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing. *Commonwealth v. Mason*, 130 A.3d 601, 628 (Pa. 2015)

- 6 -

(citing *Commonwealth v. Busanet*, 54 A.3d 35, 55 (Pa. 2012)). If any element is missing, the provocation defense fails. *Id.* (citing *Commonwealth v. Martin*, 5 A.3d 177, 189 (Pa. 2010)).

\* \* \*

The disturbing facts of the instant case do not support a finding of voluntary manslaughter based on heat-of-passion [… .] [Appellant's] self-serving and incredible testimony was inconsistent with the overwhelming physical evidence discussed [… .] The sheer number of stab wounds and grisly nature of this case prevents this [c]ourt, as factfinder, from concluding that [Appellant] acted with anything other than the specific intent to kill.

Trial Court Opinion, 5/17/19, at 8-9.

We agree. Appellant testified that he and the decedent had gone to bed at approximately 11:00 pm, after simply saying "goodnight" to each other. N.T., 2/12/19, at 14. Appellant asserts that he later was awakened by the decedent "twisting and turning in bed." *Id.* at 106. He explained that an argument ensued. *Id.* at 107. He stated that he left the bedroom to use the bathroom, and upon returning, the decedent was sitting up in bed, crying, and asked him "why the hell [he] came into her life to destroy her." *Id.* at 108. Appellant responded that he did not know what she was talking about and began to make his way past the decedent, who "raised her arm from anger and [he] saw the knife inside her hand." *Id.* at 108. Appellant maintains that the decedent said she was going to hurt him and she got up from the bed. *Id.* at 108-109. A struggle ensued, and Appellant attempted to gain control of the knife. *Id.* at 109. Appellant obtained the knife and "had to use the knife to stop her." *Id.* at 112. Appellant also stated that during this struggle,

the decedent had grabbed Appellant by the testicles and he had to "use the knife multiple times to stop her." *Id.*

The decedent's daughter and mother were also in the house the night of the murder. N.T., 2/11/19, at 12-13, 46-47. Each were in a bedroom on the same floor as the decedent's bedroom. *Id.* at 11, 48. The decedent's daughter testified that she had awakened to the sound of her mother screaming. *Id.* at 13-15. She did not hear any words in the "screaming," only a "screaming noise." *Id.* at 15. She did not hear any argument or other sounds prior to hearing her mother screaming. *Id.* at 14. After hearing her mother scream, she ran to her mother's bedroom and saw her mother on the floor, bleeding, with Appellant on top of her. *Id.* at 13. She saw a knife in Appellant's hand while he was bending over the decedent. *Id.* at 19.

The decedent's mother testified that on the night of the murder, she was laying in her bed, and heard a noise that she first believed to be made by someone having a nightmare, and she went to check on the decedent. N.T., 2/11/19, at 53. The decedent's mother testified that when she got to the decedent's room, she saw the decedent on the floor, bleeding, with a knife in her neck. *Id.* at 53. The decedent's mother also testified that she saw Appellant there, and he said to her: "I killed the bitch. I killed the bitch. I told you I was going to kill the bitch." *Id.* at 54.

Thus, the testimony from the decedent's mother and daughter contradict Appellant's testimony that the killing was precipitated by a heated argument with the decedent and a struggle over the knife. Furthermore, as

noted above, the trial court did not find Appellant's testimony to be credible. Additionally, evidence of a long, tumultuous relationship and arguments prior to the killing is insufficient to establish the heat-of-passion defense. ***See Commonwealth v. Dick***, 978 A.2d 956, 960 (Pa. 2009) (A tumultuous relationship between the appellant and his wife in conjunction with their argument sometime prior to the incident was "clearly insufficient" to establish "heat of passion," and the appellant did not prove arguable merit to the pursuit of a heat of passion defense).

Accordingly, the evidence produced in this case was sufficient to establish that Appellant was guilty of first-degree murder. Appellant is entitled to no relief on his claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/20