J-A03036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
DEBORAH ANN STEPHENS :
:
Appellant : No. 898 MDA 2020

Appeal from the Judgment of Sentence Entered January 16, 2020
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001094-2018

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED FEBRUARY 19, 2021**

Deborah Ann Stephens appeals from the judgment of sentence, entered in the Court of Common Pleas of Adams County, following the entry of a conditional, open guilty plea to third-degree murder.[1] Stephens admitted to hitting the victim, her husband, at least 36 times with a baseball bat in the head, inflicting fatal blunt force trauma and causing multiple skull fractures. After careful review, we affirm.

Nine days before his death, the victim sent the parties' son a text message stating that Stephens had threatened the victim that she was going to hit him in the head 20 times with a baseball bat. Specifically, the text message stated:

---

[1] 18 Pa.C.S. § 2502(c).

J-A03036-21

> The whole time you were on the phone with her[,] she stood over me watching for me to get on my phone and text. I was looking at [C]raigslist[,] nothing else[. T]h[e]n[, a]s soon as you hung up, [s]he started harassing me yes both ways. Then when I started to leave[,] Shea (sic) unhook[ed] my suspenders and continued until I was out the door. You take it for what it's worth[. S]he threatened me with a baseball bat[. F]irst to hit me over the head and crack me 20 times in the face[. Then] she slapped me 10 times say (sic) just imagine that was a bat. She also said one of us is going to be dead over these. (sic).

Stephens, J.E., Jr., Text Message to J.E. Stephens, III, 8/28/18 at 4:37 PM (attached as "Exhibit A" to Commonwealth's Memorandum of Law Regarding Anticipated Evidentiary Trial Issues). On September 6, 2018, the parties' son told troopers that the victim was dead inside their house.[2] When troopers arrived to investigate the report of a death at the home, Stephens exited the residence and told one of the troopers that she "killed her husband with a baseball bat." Affidavit of Probable Cause, 11/2/18. The troopers found the lifeless body of the victim on the floor of the home. The Commonwealth charged Stephens with first-degree[3] and third-degree murder (F-1). She was not charged with voluntary manslaughter.

On July 10, 2019, the Commonwealth filed a motion for a pre-trial ruling asking the court to determine whether voluntary manslaughter, although

---

[2] When Stephens failed to report to work, the parties' son visited his parents' home. When he arrived at the residence, the front door was locked and Stephens would not open the door for him, but told her son to call the police. Stephens then told her son, "I hit him with a bat, he's in the bedroom, I killed him." Affidavit of Probable Cause, 11/2/18.

[3] 18 Pa.C.S. § 2502(a).

- 2 -

uncharged in the matter, would be considered by the jury. The Commonwealth was concerned that Stephens would attempt to request such a charge under a "heat of passion" theory. After argument, the trial court denied the Commonwealth's motion, noting that the issue could be revisited during trial.[4]

On August 28, 2019, the Commonwealth filed a motion *in limine* to preclude Stephens from introducing text messages documenting the victim's alleged marital infidelity, claiming such evidence was irrelevant and hearsay. Specifically, the Commonwealth sought to preclude electronic messages, sent between the victim and an unidentified third party in June, July, and August of 2018. The Commonwealth claimed that this case was different from one where there was physical abuse perpetrated on the defendant by the victim or one that involved battered woman syndrome or an immediate heat-of-passion-type offense. Thus, the Commonwealth, not the defense, had the burden to prove any type of motive or intent.

_____

[4] Specifically, the trial court stated:

> While a voluntary manslaughter instruction may not be warranted under the facts currently apparent about [Stephens'] knowledge of marital discord and [Stephens'] allegations of infidelity and [her] threats toward Decedent, which were known to [Stephens] or made by her well before the homicide, this [c]ourt cannot know what additional evidence of provocation [Stephens] hopes to present at trial.

Opinion, 8/26/19, at 2.

At argument on the motion *in limine*, held on September 23, 2019, Stephens argued that the evidence was admissible because it *was* relevant to both her motive and intent in committing the fatal act, stating:

> It's not only relevant to motive, it would be relevant to intent. It's part of the story of this case. Absent any explanation as to why the act at issue that led to the decedent's death occurred, essentially what you would be having, Your Honor, is evidence of a random killing being brought in front of the jury. Not only [is that] fundamentally unfair, it simply wouldn't make any sense.

N.T. Motion *In Limine* Argument, 9/23/19, at 4-5. The court granted the Commonwealth's motion in part, excluding any evidence of infidelity that occurred prior to the date of the murder, finding that such evidence was too remote in time to the murder to be relevant to any defense. The court, however, ruled that evidence about incidents occurring on the day of the killing may be admissible to support a defense of provocation if, at trial, Stephens introduced such evidence and was able to show that she acted in the heat of passion.[5]

_____

[5] Specifically, the trial court's order stated:

> The Commonwealth's [m]otion is granted as it pertains to evidence of communications including, but not limited to, social media comments and postings, text messages, [and] electronic communications occurring prior to the date of the homicide or other information pertaining to the Decedent's alleged infidelity known to Defendant prior to the date of the homicide. Evidence of such communications or actions occurring on the date of the homicide may be admissible[,] provided they are sufficient in proximity to the time of the homicide to be relevant to the issue of provocation and whether Defendant acted in the heat of

In lieu of proceeding to trial, Stephens pled guilty to third-degree murder on October 31, 2019. While Stephens and the prosecution made no agreement as to sentencing in the open plea, Stephens reserved the right to challenge, on direct appeal, the trial court's ruling that precluded evidence concerning the victim's alleged marital infidelity. The Commonwealth agreed that if our Court reversed the trial court's ruling and vacated Stephens' judgment of sentence, Stephens would be permitted to withdraw her plea within 30 days of our Court's decision. The court memorialized the conditional plea in an October 30, 2019 order that stated:

> The plea is a conditional plea. The condition of plea and the issue reserved by the [d]efense is the right to appeal from the portion of this [c]ourt's order dated September 23, 2019, which granted in part the Commonwealth's motion *in limine* seeking to preclude evidence concerning De[ceden]t's alleged marital infidelity.

Order of Court, 10/23/19; **see also** Order of Court, 11/1/19 (noting minor correction to 10/23/19 order by changing "Defendant" to "Decedent").

Stephens filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Stephens presents one issue for our consideration: "Did the [trial] court err when it granted the Commonwealth's motion *in limine* in part and ruled that

---

> passion. If Defendant introduces such evidence in her case in chief, the Commonwealth may introduce rebuttal evidence showing Defendant's awareness of Decedent's purported infidelity prior to the date of the homicide in order to rebut heat of passion arguments.

Trial Court Order, 9/23/19.

evidence of marital infidelity known by Stephens before the day of the homicide is not admissible, but that evidence of same from the day of the homicide may be admissible?" Appellant's Brief, at 4.

> When reviewing the [grant or] denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. ***See Commonwealth v. Zugay***, [] 745 A.2d 639 (Pa. [Super.] 2000) (explaining that because a motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to ruling on a motion to suppress evidence, our standard of review of a motion *in limine* is the same of that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.

***Commonwealth v. Moser***, 188 A.3d 1217, 1229 (Pa. Super. 2018) (quoting ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013) (some citations omitted)). A ruling on the admission or exclusion of evidence "will not be disturbed on appeal unless that ruling reflects 'manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.'" ***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010) (citation omitted).

Instantly, the trial court granted, in part, the Commonwealth's motion *in limine*, which effectively precluded Stephens from presenting any evidence of the victim's infidelity prior to the date of the homicide. Stephens claims that this evidence was admissible to prove a heat of passion defense to murder because "the cumulative impact of a related series of events is relevant to passion and provocation." Appellant's Brief, at 20.

A heat of passion defense is a partial defense that addresses the element of intent and, if successfully argued, mitigates first-degree murder to voluntary manslaughter, a first-degree felony. ***Commonwealth v. Hutchinson***, 25 A.3d 277, 314 (Pa. 2011). Specifically, in invoking the defense, the defendant seeks to prove that, at the time of the killing, he or she was acting under a sudden and intense passion that resulted from serious provocation by the victim. ***See*** 18 Pa.C.S. § 2503(a) ("A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation . . . by the individual killed[.]"). "Passion" has been defined as "[a]nger and terror provided they reach a degree of intensity sufficient to obscure temporarily the reason of the person affected. . . . [It] . . . means any of the emotions of the mind known as anger, rage, sudden resentment[,] or terror, rendering the mind incapable of cool reflection[.]" ***Commonwealth v. Laich***, 777 A.3d 1057, 1061 (Pa. 2001).

The relevant inquiry for purposes of a heat of passion defense is what the defendant's state of mind was **at the time of the murder**—in particular, whether she was "uncontrollably compelled by passion" or whether "the victim had provoked [her] into such passion." ***Hutchinson***, ***supra*** at 315. "[T]he passage of time between [the] provocation and the 'passion' must be viewed as a cooling period, and killings will not be deemed to have occurred under the heat of passion where there was sufficient time for cooling between

whatever provocation might have existed and the actual killings." ***Commonwealth v. Mason***, 130 A.3d 601, 629 (Pa. 2015).

"In order to successfully argue heat of passion, a defendant must prove: (1) provocation on the part of the victim; (2) that a reasonable [person] who was confronted with the provoking events would become 'impassioned to the extent that his [or her] mind was incapable of cool reflection;' and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing." ***Id.*** at 628. If any element is missing, the provocation defense fails. ***Hutchinson***, ***supra*** at 315.

In ***Hutchinson***, ***supra***, the Supreme Court concluded that the defendant's claim that counsel was ineffective for failing to raise a heat of passion defense was meritless because the defendant

> suggest[ed] no evidence that, **at the time of the murder**, he had been so provoked by the victim as to be compelled by passion beyond the control of his reason. [Rather, t]he evidence cited by [the defendant], i.e., that [the defendant] and the victim had been arguing shortly before the murder, that there were serious problems in their relationship, that [the defendant] was jealous, and that [the defendant]'s prior or concurrent paramours had sought restraining orders against him, does not show that, **at the time of the murder**, [defendant] was uncontrollably compelled by passion or that the victim had provoked him into such passion.

***Id.*** (emphasis added). ***See Mason***, ***supra*** at 628 (cumulative effect of defendant's "stormy relationship" with victim and revelations of infidelity that occurred in parties' relationship did not qualify as heat of passion defense evidence where defendant did not specifically assert that "**at the time of the killing**" victim's provocation caused him to act or that defendant had no time

to cool off before killing) (emphasis added); *see also Commonwealth v. Williams*, 980 A.3d 510 (Pa. 2009) (violent confrontation occurring two days prior to murder did not serve to reduce degree of guilt to manslaughter since killings do not occur under heat of passion where there is sufficient time to cool between whatever provocation might have existed and actual killings). In fact, our Courts have historically found that "revelations of infidelity [are] insufficient to constitute provocation for purposes of a heat of passion defense." *Mason*, *supra* at 629.

This is not a case where Stephens proffered a theory of self-defense, or one in which the victim had physically and psychologically abused her for years leading up to his death. In such a case, we agree that the prior history of Stephens' marital discord with the victim might be relevant to establish the quantum of provocation needed to prove such a heat of passion defense. *See Commonwealth v. McCusker*, 292 A.2d 286, 290 (Pa. 1972) (not until court finds that accused was confronted with sufficient provocation does focus shift to defendant's response to that provocation); *see also Commonwealth v. Stonehouse*, 555 A.2d 772 (Pa. 1989) (recognizing that cumulative effects of psychological and physical abuse by victim's behavior in past relevant in determining "reasonableness" of battered person's fear of imminent danger of death or serious bodily injury). While the *McCusker* Court opined that "[i]n making the objective determination as to what constitutes sufficient provocation reliance may be placed upon the cumulative impact of *a* **series of related events**," *McCusker*, *supra* at 290 (emphasis added), our

Supreme Court subsequently explained the limited nature of that holding, stating that "[t]o the extent that [a defendant] suggests a heat of passion defense may be based purely on provoking actions or statements *that are not contemporaneous* to the resulting 'sudden and intense passion,' [he or she] is clearly mistaken, as the passage of time between provocation and the 'passion' must be viewed as a cooling period." **Mason**, **supra** at 629 (emphasis added).

Here, Stephens' evidence of the victim's infidelity prior to the homicide is insufficient to be deemed adequate provocation, and, thus, was irrelevant to any heat of passion defense. In fact, the text message from the victim to the parties' son, indicating that Stephens had threatened the victim more than one week before she committed the deadly acts, militates against a heat of passion defense, and suggests that the killing was, in fact, a premeditated act. Accordingly, the trial court correctly precluded evidence of infidelity prior to the killing where Stephens had a sufficient time to cool off between those events and the fatal act. **Mason**, **supra** at 629 n.34 ("With regard to Appellant's reliance on [] **McCusker**[] for the proposition that 'in making the objective determination as to what constitutes sufficient provocation, reliance may be placed upon the cumulative impact of a series of related events,'" . . . Appellant neglects to mention that the series of related events in [**McCusker**] involved a prior revelation of infidelity coupled with two other provoking statements **made immediately prior to the killing**.") (emphasis in original). We conclude the excluded evidence from one to three months

before the fatal event would have been irrelevant for a heat of passion defense to show "emotional upheaval or provocation caused by the victim" **at the time of the killing**. ***Commonwealth v. Dick***, 978 A.2d 956, 960 (Pa. 2009). Thus, we find no abuse of discretion or manifest unreasonableness in the court's ruling. ***Moser***, ***supra***; ***Minich***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/19/2021