J-S26011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DIONE MAURICE ANDREWS, | |
| Appellant | No. 1221 EDA 2017 |

Appeal from the Judgment of Sentence Entered March 3, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0006345-2016

BEFORE:  BENDER, P.J.E., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 10, 2018**

Appellant, Dione Maurice Andrews, appeals from the judgment of sentence of time served to 23 months' incarceration, imposed after he was convicted by a jury of indecent assault, 18 Pa.C.S. § 3126(a)(1).  Appellant challenges the weight of the evidence to sustain his conviction, as well as an evidentiary ruling by the trial court.  We affirm.

The trial court briefly summarized the facts and procedural history of Appellant's case, as follows:

> During the time of the incident, April 27, 2016, [Appellant] was living at the home of his friend Robert Hagler.  Hagler arranged to meet up with the victim, D.M.[,] in the early morning hours.  They went back to Hagler's home.  D.M. believed that only Hagler and his grandmother were present.  She was unaware that [Appellant] was also present in the home.  Hagler and the victim

---

[*] Former Justice specially assigned to the Superior Court.

engaged in consensual sexual intercourse. When Hagler left the dark bedroom, [Appellant] walked in and attempted to have sexual intercourse with D.M. without consent, and only stopped because he was suffering from erectile dysfunction.

On March 3, 2017, a two-day jury trial concluded. The jury found [Appellant] guilty of indecent assault without consent. The jury acquitted him of rape, sexual assault and indecent assault - forcible compulsion. Also on March 3, 2017, [Appellant] was sentenced to a term of imprisonment of time served to twenty-three months[' incarceration]. A timely post-sentence motion was filed, challenging the weight of the evidence. The motion was denied on March 16, 2017. This timely appeal followed.

Trial Court Opinion, 7/5/17, at 1-2.

On April 19, 2017, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. On May 10, 2017, the court granted Appellant a 10-day extension of time to file his Rule 1925(b) statement. Appellant subsequently requested another extension of time to file his concise statement, but the court seemingly did not rule on that request. Appellant filed his Rule 1925(b) statement on May 25, 2017, beyond the 10-day extension initially granted by the court. Notwithstanding the untimeliness of Appellant's Rule 1925(b) statement, the trial court issued an opinion on July 5, 2017, addressing the merits of his issues. As such, we need not remand, and we will examine the two issues Appellant presents herein. *See Commonwealth v. Burton*, 973 A.2d 428, 433 (Pa. Super. 2009). Those issues are as follows:

1. The verdict was against the weight of the evidence.

2. The trial court erred in precluding evidence that indicated that Appellant did not assault the complainant.

Appellant's Brief at 6 (unnecessary capitalization omitted).

In regard to Appellant's first issue, we begin by noting that,

[a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well[-]settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Here, Appellant claims that the greater weight of the evidence demonstrated that he believed D.M. was a consenting participant in their sexual encounter and, thus, he lacked the intent to assault her. In support, he cites his own trial testimony that Hagler told him that D.M. wanted to have sex with him, thus 'duping' Appellant into believing that D.M. was consenting to the sexual intercourse. *See* N.T. Trial, 3/2/17, at 126. Appellant also relies on his and D.M.'s testimony that, during their sexual encounter, Hagler "peep[ed] in the room, smile[d] and then closed the door," *id.* at 18, and D.M.'s testimony that, because she initially thought that Appellant was Hagler, she was 'amorous' with Appellant at the outset of the encounter, *id.* at 16. Appellant claims that as soon as D.M. said the word "rape," he realized she was not consenting and he "immediately stopped any amorous gestures…." *Id.* at 19. Finally, Appellant points out that after the incident, Hagler

- 3 -

"harassed [D.M.] on the streets and called her vile names," which Appellant characterizes as "inculpatory" behavior. *Id.* at 22. Appellant also stresses that he presented evidence that his "reputation in the community was impeccable." *Id.* In light of all of this evidence, Appellant maintains that the jury's verdict "truly shocks the conscience." *Id.* at 23.

The trial court disagreed with Appellant and, after reviewing the record, we discern no abuse of discretion in that decision. Even accepting that when Appellant entered the bedroom and initiated the physical contact with D.M., he believed that she was a consenting participant, D.M. testified that once she realized that Appellant was not Hagler, she "kept repeating, 'Get off of me. Get off of me. Get off of me.' And [Appellant] didn't." N.T. Trial at 66. D.M. further stated that, as she was telling Appellant to get off her, she "was trying to push him off me, push his shoulders, you know, so he would get off me. But as I was doing that he was, you know, forcefully coming back down." *Id.* When asked what Appellant "was doing with his body[,]" D.M. explained that "[a]s [she] was pushing, he was rejecting that force" and "[j]ust continuing on with what he came in there to do." *Id.* at 66, 67. D.M. clarified that she "felt [Appellant's] penis try to insert [into] my vagina[,]" and that "maybe a small portion" of Appellant's penis did enter her vagina. *Id.* at 67. It was at this point that D.M. asked Appellant, "Are you really going to rape me?" and Appellant then got off her, apparently because "he was having erectile dysfunction and he was embarrassed…." *Id.* D.M. also testified that Hagler opened the door, looked in, and then shut the door after she had told Appellant

- 4 -

to 'get off her,' but she did not know if Hagler "knew exactly what was going on…." *Id.* at 70.[1] Additionally, the Commonwealth admitted evidence that after the incident, Appellant messaged D.M. on social media and agreed with D.M. that what had happened between them "wasn't right" because Appellant knew "what [he] was doing" and D.M. did not. *Id.* at 79.

In light of this evidence, the trial court did not abuse its discretion in rejecting Appellant's weight-of-the-evidence claim. The jury was clearly free to believe D.M.'s testimony that Appellant continued to force himself on her after she verbally and physically rejected his advances. This is true even in light of the minor inconsistencies in the witnesses' testimony, the evidence that Hagler 'duped' Appellant, Hagler's alleged 'inculpatory' conduct after the incident, and Appellant's good reputation in the community. Therefore, Appellant's first issue does not warrant relief.

In Appellant's second issue, he argues that the trial court erred by not allowing him to question D.M. about a phone call she had with Appellant that was recorded by the police. Specifically, during the cross-examination of D.M., the following exchange occurred:

---

[1] Hagler testified that when he opened the door to the room, he saw Appellant on top of D.M. and heard her say, "Get off of me." N.T. Trial at 24. Hagler claimed that he repeatedly told Appellant to get off D.M., but Appellant "just kept doing what he was doing." *Id.* Hagler testified that "[b]ecause [Appellant] wasn't listening to [him,]" he left the room and waited outside until D.M. left. *Id.* at 24, 25.

[Defense Counsel:] You made this phone call to be recorded, correct?

[D.M.:] Yes.

[Defense Counsel:] And the purpose of that phone call was to see if you could get [Appellant] to basically say that he assaulted you, correct?

[D.M.:] Yes.

**[Defense Counsel:] And he didn't say that, did he --**

[The Commonwealth:] Objection; hearsay.

[The Court:] Sustained.

N.T. Trial at 98 (emphasis added).

Appellant contends that the above-emphasized question sought to elicit testimony about "[w]hat [he] did **not** say" and, thus, it did not constitute hearsay. Appellant's Brief at 26 (emphasis added). He also argues that the question "was a fair retort to the Commonwealth's questioning of [D.M.] that suggested Appellant was guilty." *Id.* Appellant avers that because "[t]his was a case that turned solely on credibility[,] … preventing the question from being answered substantially contributed to his conviction." *Id.*

In response, the Commonwealth asserts that the question was clearly designed to elicit "an out-of-court statement offered for its truth" and, thus, D.M.'s answer would have been hearsay. Commonwealth's Brief at 15; *see also* Pa.R.E. 801(c) (defining hearsay as "a statement that [] the declarant does not make while testifying at the current trial or hearing; and [] a party offers in evidence to prove the truth of the matter asserted in the statement"). Nevertheless, the Commonwealth also stresses that Appellant

fails … to articulate how the victim's testimony that, on a prior occasion he said he did not do it, would have changed the outcome of his trial, especially where he testified at trial that he did not do it. The jury was perfectly capable of assessing his credibility when he was on the witness stand. That it rejected his story does not somehow make the court's ruling excluding inadmissible hearsay improper or otherwise entitle him to relief.

*Id.* at 16.

While we agree with Appellant that the wording of the question posed to D.M. seemingly sought a response about what Appellant did ***not*** say, rather than what he did, we need not determine whether such a response would constitute hearsay. Even if D.M. had testified that Appellant did not admit to assaulting her during their recorded phone conversation, that testimony would not have changed the outcome of Appellant's trial. As the Commonwealth stresses, Appellant himself took the stand and testified that he did not assault D.M. Clearly, the jury believed D.M.'s testimony to the contrary, which was bolstered by Hagler's testimony that he heard D.M. repeatedly telling Appellant to get off her, and by Appellant's messages to D.M. after the incident admitting that what had happened was wrong. Therefore, we are convinced by the Commonwealth's 'harmless error' argument, and we conclude that the trial court's precluding D.M.'s testimony did not impact the jury's verdict.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/10/18