J-S09006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH KUZNICKI, III | : | |
| | : | |
| Appellant | : | No. 1058 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 12, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s):  CP-65-CR-0001830-2020

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  May 25, 2023**

Appellant, Joseph Kuznicki, III, appeals from the judgment of sentence

of six months' probation, imposed after he was convicted, following a non-jury

trial, of driving under the influence of alcohol – general impairment ("DUI"),

75 Pa.C.S. § 3802(a)(1), and five summary traffic offenses.  Appellant solely

challenges the weight of the evidence to sustain his conviction.  After careful

review, we affirm.

The trial court set forth a detailed summary of the facts and procedural

history of Appellant's case, as follows:

## FACTUAL HISTORY

The charges in this case arose from a traffic stop and subsequent
investigation of a vehicle driven by [Appellant] in New Alexandria
Township, Westmoreland County.  The evidence presented at a
non[-]jury trial established that on October 1, 2019, while on
patrol in a marked state police unit, Trooper Stephen Rowe, of the
Pennsylvania State Police Troop A Kiski Valley barracks, observed
a vehicle traveling northbound on State Route 981 in Derry

Township traveling into New Alexandria Borough towards Route 22. Trooper Rowe testified that he observed the vehicle cross over the double yellow line and the fog line two to three times over the course of two to three miles as well as travel 60 miles per hour in a 40-mile-per-hour zone. Additionally, Trooper Rowe stated that he observed the vehicle make a left-hand turn onto State Route 22 Westbound from a lane marked for straight travel and decrease its speed to 20 miles an hour in a 40 and 45-mile-an-hour zone. Based upon his observations, Trooper Rowe indicated that he initiated a traffic stop of the vehicle and identified the driver as [Appellant] … by his Pennsylvania driver's license. The passenger was also identified as the owner of the vehicle. Trooper Rowe testified that he observed [Appellant's] speech to be "very slurred[,"] and he detected an odor of an alcoholic beverage emanating from [Appellant's] person, breath, and from within the vehicle. Trooper Rowe stated that he asked [Appellant] to step out of the vehicle and perform standardized field sobriety tests[,] at which time he observed [Appellant] walking with a staggered gait. Trooper Rowe indicated that the area was a flat, clean, and dry asphalt surface. Trooper Rowe testified that he attempted to perform the Horizontal Gaze Nystagmus test as well as explain and demonstrate the One-Leg Stand test[,] however, [Appellant] displayed "verbal resistance" and "lack of cooperation" and indicated to Trooper Rowe that he was not going to perform any additional tests. Trooper Rowe stated that despite [Appellant's] verbal resistance, he was compliant for the most part. Trooper Rowe testified that [Appellant] submitted to a Preliminary Breath Test, and he received a positive indicator. Believing that [Appellant] was under the influence of alcohol to a degree that rendered him incapable of safe driving, Trooper Rowe indicated that he detained [Appellant] and placed him in the rear of the marked patrol vehicle to transport him to Latrobe Hospital for a blood draw.

Trooper Rowe testified that [Appellant] refused to consent to a blood draw and he was released after securing alternate transportation. Trooper Rowe testified that he is [i]n his 14th year working as a state trooper and [i]n his 17th year working for the state police. Additionally, Trooper Rowe stated that through[out] his career, he has made hundreds of DUI arrests.

On cross-examination, Trooper Rowe testified that although his police cruiser was equipped with a mobile video recording (MVR) device and it was active for a portion of the stop, the MVR video was not available at the time of trial. Further, Trooper Rowe

confirmed that before administering the standardized field sobriety tests, he asked [Appellant] whether he had any medical conditions that would prevent him from being able to perform the tests[.] … [A]lthough he did not recall [Appellant's] response, in his personal and professional opinion, Trooper Rowe determined that [Appellant] would have been able to complete the tests.

[Appellant] also elected to testify at the non[-]jury trial. [Appellant], who is employed as a registered nurse and nurse supervisor, testified that on the night prior to the incident, he began working at 11 p.m. and arrived back home at 3:30 p.m. At approximately 8:00 p.m., on September 30, 2019, he stated that his friend, Abraham Powell, came over and[,] on the condition that Mr. Powell agree to drive, they went out. [Appellant] testified that they arrived at the Oasis bar where they met a couple of high school friends, and [Appellant] consumed three beers and two Red Bulls over a six-hour period. [Appellant] testified that he was undergoing chemotherapy for leukemia at this time[,] and he was "a little nauseated" so he ate a light supper prior to going out. [Appellant] indicated that he and Mr. Powell stayed at the Oasis bar until it closed at approximately 2 a.m. [Appellant] stated that Mr. Powell began throwing up, and he attempted to call Uber, Lyft, his wife, and his dad for a ride[. H]owever, when he could not get ahold of anyone, he decided to drive Mr. Powell's vehicle home because he was exhausted. [Appellant] denied speeding or swerving while driving in route to his home; however, he agreed that he may have made a left-hand turn from the center straight lane as he was contemplating whether to drive to his home or his father's, who lived three or four miles up the road. [Appellant] testified that he was "definitely driving slow" because he was "delirious at that time" as he had been awake for "32, 34 hours with minimum sleep that week[." Appellant] testified that he did not perform the standardized field sobriety tests or submit to a blood draw because he was "angry as hell" and tired and just wanted to go home. [Appellant] stated that he "probably couldn't walk right" as he just had a lumbar puncture.

On cross-examination, [Appellant] testified that he believed that Mr. Powell lived out of state, and he was surprised to learn that his vehicle was registered to an address in Greensburg, Pennsylvania. Further, [Appellant] stated that he specifically was aware that he consumed three beers and two Red Bulls on the night in question because Mr. Powell informed him of such after he looked at his receipt[. H]owever, no receipt was produced at trial.

## **PROCEDURAL HISTORY**

As a result of the investigation, [Appellant] was charged with … [DUI], in violation of 75 Pa.C.S.[] § 3802(a)(1)[,] and five related summary offenses.

On January 10, 2022, a non[-]jury trial was held before this [c]ourt. … At the conclusion of the non[-]jury trial, this [c]ourt found [Appellant] guilty of [DUI] and found him not guilty of the remaining summary counts. Upon motion of [Appellant], sentencing was deferred 90 days. On April 12, 2022, the [c]ourt sentenced [Appellant] [for his DUI conviction] to six (6) months[’] probation and ordered him to pay costs and fees.

On April 14, 2022, [Appellant] filed [p]ost-[s]entence [m]otions before the [c]ourt; however, due to an inadvertent error, a hearing was never scheduled in this matter. On September 8, 2022, after being apprised of this matter by [d]efense [c]ounsel, this [c]ourt entered an [o]rder finding that[, because] the matter was not disposed of within 120 days and the Westmoreland County Clerk of Courts had failed to notify [Appellant] by entering an order on behalf of the [c]ourt, as provided in Pa.R.Crim.P 720(B)(3)(c) and Rule 114, the [p]ost-[s]entence [m]otion was deemed denied by operation of law pursuant to Pa.R.Crim.P. 720. The [c]ourt informed [Appellant] that he had thirty (30) days to file an appeal to the Pennsylvania Superior Court, if he elected to do so. On September 13, 2022, [Appellant] filed a timely [n]otice of [a]ppeal to the Pennsylvania Superior Court. On September 15, 2022, this [c]ourt ordered [Appellant] to file a [Pa.R.A.P. 1925(b) c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal. On October 3, 2022, [Appellant] filed said statement.

Trial Court Opinion (TCO), 10/31/22, at 1-5 (footnote and citations to the record omitted). The trial court filed its Rule 1925(a) opinion on October 31, 2022.

Herein, Appellant states one issue for our review: "Whether … Appellant's conviction is supported by the weight of the evidence when … Appellant's testimony presents an equally plausible explanation for his behavior – tiredness – as opposed to intoxication?" Appellant's Brief at 2.

- 4 -

Initially, we recognize that,

> [a] claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse
>
> of discretion.***Commonwealth v. Houser***, 18 A.3d 1128, 1135-
>
> 36 (Pa. 2011) (citations and internal quotation marks omitted).

Presently, Appellant claims that the trial court's verdict was contrary to the weight of the evidence because there were "two … plausible explanations for … Appellant's behavior – intoxication and tiredness." Appellant's Brief at 13. He argues that,

> [c]onsumption of alcohol alone is not proof positive that … Appellant's level of intoxication rendered him incapable of safe driving. … Appellant readily admitted he was nearly delirious at the time of his stop, having been awake for thirty-two (32) to thirty-four (34) consecutive hours and suffering the effects of chemotherapy. ***See*** [N.T. Trial, 1/10/22,] at 40-41, 46 (describing his physical state at that time including the effects of chemotherapy including nausea, dizziness, and fatigue). These symptoms, in conjunction with his back pain from chemotherapy injections, are an equally plausible explanation for his appearance and behavior as intoxication. Indeed, even his refusal for chemical testing is understandable given his anger for being placed in the position he found himself in. ***See*** [***id.***] at 47 (describing his anger toward Powell).

*Id.* at 12-13. Stressing that "a guilty verdict cannot be based on surmise or conjecture[,]" *id.* at 13 (citing *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993)), Appellant insists that the court's verdict in this case must be vacated because it was "premised on surmise regarding the cause of … Appellant's apparent inability to conform to traffic laws." *Id.* Specifically, the court ignored the equally likely possibility that Appellant's behavior stemmed from his exhaustion, rather than intoxication. Accordingly, Appellant maintains that his conviction for DUI "is a miscarriage of justice that should shock the conscience of the Court." *Id.* at 13-14.

We disagree. The trial court found Trooper Rowe's testimony to be credible, and Appellant's testimony "to be self-serving, inconsistent, and illogical." TCO at 7. It then explained:

> Through the duration of the non-jury trial, the [c]ourt considered the evidence presented by the Commonwealth, namely the testimony of Trooper Rowe, who testified that he observed the vehicle driven by [Appellant] commit multiple traffic violations. [Appellant] displayed indicia of intoxication. Based upon Trooper Rowe's training, experience, and observations[,] Trooper Rowe opined that [Appellant] was incapable of safely driving a motor vehicle. The [c]ourt afforded great weight to Trooper Rowe's testimony because he was a credible witness. Based upon this [c]ourt's review of the entire record, this [c]ourt does not find that the verdict is inconsistent or so contrary to the evidence as to shock this [c]ourt's sense of justice.

*Id.* at 8.

We discern no abuse of discretion in the court's decision. Appellant essentially asks us to reweigh the evidence and find that his testimony was more credible and weighty than that of Trooper Rowe. We cannot do so. The

- 6 -

trial court was well within its discretion to place more weight on the testimony of Trooper Rowe, given his training and experience in handling DUI cases and the evidence indicating that Appellant was intoxicated, such as his slurred speech, staggered gait, positive Preliminary Breath Test, poor performance on the field sobriety tests, and refusal to consent to a blood draw. Accordingly, Appellant's weight-of-the-evidence claim does not warrant relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/25/2023